ANTONIO J. GENEIVE, petitioner,

*v.*

SYLVIA C. GENEIVE, defendant.

[Decided June 23d, 1924.]

**Evidence—Rule Against Leading Questions—Nullity of Marriage —Impotency—Examination Under Order of Court.**

On final hearing on master's report and depositions *ex parte.* On petition for nullity of marriage.

*Mr. Edward M. Salley,* for the petitioner.

WALKER, CHANCELLOR.

This case flagrantly violates the rule against leading questions. The petitioner on direct examination is asked this question: "*Q.* After you have a civil ceremony do the Italians usually have a religious ceremony?" and the unexpected answer, "No, sir," was given. However, it was proved by other witnesses that a religious ceremony usually follows the civil ceremony. Again, "*Q.* Did your wife ever live with you as a wife?" That question may, and probably does, mean several things. The answer was, "No, sir." Again, "*Q.* Did you at any time have any relations with your wife? Did you ever sleep with your wife?" The term "any relations," of course comprehends several things, and the answer, "No, never," denied every one of them, without its appearing exactly what it comprehended by the question. Again, "*Q.* How many times altogether, after you were married in New York, did you see your wife and try to get her to live with you as man and wife?" An allowable non-leading question to elicit the information sought by this question might run along lines about as follows: "Did you ever see your wife

after you were married?" Upon an affirmative answer being made, the question might then be, "When and where, how many times, and what did she say?"

Not only by decision in this court (see *In re McCraven, 87 N. J. Eq. 28*), but also by a circular letter to the special masters, I have laid it down that permitting leading questions must stop. I have been told that it is almost, if not quite, impossible to prove certain *ex parte* divorce cases without permitting leading questions to be asked. The answer is that if the solicitors will not, or cannot, ask non-leading questions, the result will be that they cannot obtain for their clients the divorces which they solicit.

The following rather remarkable examination was conducted, De Fuccio being the witness—he was family physician and had examined the petitioner: "*Q.* How did you find him from a physical and sexual standpoint? *A.* Absolutely normal. *Q.* Was he able to perform his ordinary marital relations as a husband? *A.* In my judgment he was."

If I understand the attempt here made, it was to negative a presumption that he might be impotent. Of course, there is no such presumption, and the petitioner was not called upon to refute it unless the case were defended and petitioner's impotency was pleaded by his wife, as it might have been, to show why there was no consummation. It seems like a sort of substitution for the examination of the wife.

In *Bolmer v. Edsall, 90 N. J. Eq. 299* (at *p. 304*), I observed that if the defendant would submit to a physical examination for the purpose of showing whether or not the marriage had been consummated, and the result showed that she was still a virgin, that that would corroborate the petitioner's testimony, and if the defendant were a resident of New Jersey and within the reach of the process of this court inspection might be compelled. In the *Bolmer Case* the defendant afterwards voluntarily submitted to an examination by a physician, and upon the coming in of supplemental proofs her virginity appeared and a decree of nullity was made.

In *Bissell* v. *Bissell, 93 N. J. Eq. 537,* the defendant was ordered to show cause why an order should not be made that he be examined for the purpose of ascertaining whether or not he was physically and incurably impotent. On the return day such order was made appointing two physicians inspectors, and a commission was issued. The defendant refused to present himself for examination, and I held (at *p. 541*) that where the petitioner's testimony makes a case except for the requirements of the corroboration rule, sufficient corroboration is afforded by the refusal of the accused person to submit to a physical examination by physicians, to the end that they may form and express an opinion as to the affliction of the party.

From the testimony in the case before me it would appear that the defendant resides in New York, although the record shows that she was served in this state by the sheriff of Bergen county. Perhaps she will voluntarily submit to an examination.

It is noticeable that Beatrice I. Gall, who took the testimony, is purported to have been sworn to the performance of her duty, but she did not subscribe the affidavit. That of itself might be overlooked, but the case will have to be sent back to the special master to take over again the testimony of the petitioner in accordance with the rules of law and evidence, and Miss Gall can then sign. So much of the testimony of Dr. De Fuccio as is above set out will be overruled. The additional testimony should be sent to me personally.